LADD v. REED. See Case No. 2,593.

LADD (RICKARDS v.). See Case No. 11,804.

LADD (SANDERSON v.). See Case No. 17,352.

LADD (SWAIN TURBINE & MANUF'G CO. v.). See Case No. 13,662.

---

## Case No. 7,974.

### LADD v. TUCKER MANUF'G CO.

### [4 Ban. & A. 344.] [1]

Circuit Court, D. Massachusetts. June, 1879.

PATENTS—SPRING BED BOTTOM—INFRINGEMENT.

1. A patent for a spring bed bottom, the bars of which are composed of two or more thin bars of wood laid one upon another, and having their bolt holes sufficiently larger in diameter than the bolts or rivets which pass through them, to allow each bar or strip to bend or spring independently of that or those next to it, construed to include strips or bars of wood riveted together more or less tightly.

2. Letters patent No. 191,244 granted to Hermon W. Ladd, May 29th, 1877, for an "improvement in spring bed bottoms," held valid.

[This was a bill in equity by Hermon W. Ladd against the Tucker Manufacturing Company for the alleged infringement of a patent.]

George D. Noyes, for complainant.
T. L. Livermore, for defendant.

LOWELL, Circuit Judge. The first suit between these parties is for an alleged infringement by the defendant of the complainant's patent No. 191,244, for an improvement in spring bed bottoms, issued May 29, 1877. The improvement consists in making the cross-bars or straps, of which there are usually two in each bed, and upon which the longitudinal slats are supported wholly, or in part, in making these of two or more thin strips of wood riveted together (called by the patentee his compound bar), instead of a single bar of wood, which is said in the patent to be too rigid; or a single bar of steel, which

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

is said to be liable to rust; or a leather strap, which is not rigid enough.

The specification describes the compound bar as being composed of two or more thin bars of wood, laid one upon another, and having their bolt holes sufficiently larger in diameter than the bolts or rivets which pass through them to allow each bar or strip to bend or spring independently of that or those next to it.

The defendants use the compound or double bar of wood in their beds, but they are riveted together tightly, or, at any rate, no such play is allowed for as to enable the bars to move longitudinally upon each other, for their whole length, when a weight is applied at any one or two points. The holes for the rivets are intended to be made, and probably are made, of such a size that the rivets may be pushed into them readily, but no larger than that.

There seems to be no doubt that a compound bar of wood, composed of two bars riveted together, has advantages over a single bar of wood, or a single bar of steel; and I think there is little question that this is due to the fact that the bars do move independently of each other, at and near the place of pressure, and not upon their ability so to move along their whole length.

This brings up two questions: Whether the patent can fairly be construed to include two bars of wood riveted together, though not so loosely as the patent and drawings point out; and whether, if so construed, the patent is for anything more than the substitution of one material or known spring for another.

I think the patent may in this case be construed to include strips or bars riveted together more or less tightly. The patentee made the first application of this sort of bar, and he has described truly its construction and mode of operation. He has not specified any special amount of looseness which is necessary to the operation. He may have been mistaken in this point, but he does not appear to have been fraudulent; and the operation which he says is obtained, is found to be obtained and sufficiently so by the mode used by the defendants.

The second question is one that often comes up in these days, when patents are taken out for slight modifications of machinery and manufactures. It is an important one. It was undoubtedly a part of the general knowledge of mechanics that a spring may, for many purposes, be improved by substituting a double strip or leaf for a single bar; as in the instance mentioned, in argument, of certain springs for carriages. I do not, however, think that the change is so obvious a one in its application to a spring bed, or, indeed, in the use of wood, as to require or permit me to say, that it was a mere mechanical substitution of one well-known device for another, in the article under consideration.

Decree for complainant for injunction and account.